IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| **TONYA WILLIAMSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 20-2931-TMP |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |

_____

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**
_____

On December 23, 2020, Tonya Williamson filed a Complaint seeking judicial review of a social security disability benefits decision. (ECF No. 1.) Williamson seeks to appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-34. For the reasons below, the decision of the Commissioner is AFFIRMED.[1]

**I.   BACKGROUND**

On May 27, 2016, Williamson applied for Social Security disability insurance benefits under Title II of the Act. (R. 10.)

---

[1]After the parties consented to the jurisdiction of a United States magistrate judge on April 7, 2021, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 11.)

She filed for supplemental security income that day as well. (Id.) In both applications, she alleged a disability beginning on September 1, 2015. (Id.) Williamson's initial applications were denied on September 7, 2016, and after reconsideration on February 15, 2017. (Id.) Williamson then requested a hearing on March 16, 2017, and that hearing was held on September 5, 2019, in Memphis, Tennessee. (Id.)

After the hearing, the Administrative Law Judge ("ALJ") preliminarily determined that Williamson met the insured status requirement of the Act. (R. 12.) The ALJ then used the five-step analysis to conclude that Williamson was not disabled from September 1, 2015, through the date of the ALJ's decision. (R. 12-26.) For the first step, the ALJ determined that Williamson had not engaged in any substantial gainful activity since September 1, 2015, the alleged onset date of her disability. (R. 12.) For the second step, the ALJ found that Williamson had the following severe impairments: "obesity, degenerative disc disease of the cervical spine, osteoarthritis or [sic] the right knee, and depression." (R. 13.) Williamson also alleged disability stemming from diabetes mellitus, asthma, hypertension, lumbar spine degenerative disc disease, a heart condition, and fibromyalgia. (R. 13-16.) Regarding her diabetes, the ALJ concluded that it did not impose even minimal limitations on her work ability due to effective treatment with medication and a lack of severe symptoms. (R. 13.)

-2-

The ALJ found that her asthma was nonsevere, since Williamson's respiratory examinations were "routinely normal" and she presented "no pulmonary function tests consistent with severe disease process." (Id.) Williamson's hypertension was found to not be disabling due to strong response to medication and a lack of documented dysfunction. (Id.) The ALJ discussed Williamson's *cervical* spine degenerative disc disorder in detail but concluded that her "*lumbar* spine degenerative disc disease imposes no more than minimal limitations and is nonsevere." (R. 13-14) (emphasis added). Williamson's heart condition was found nonsevere, due to the lack documentation of "any heart problem other than first degree AV block." (R. 15.) Finally, the ALJ concluded that the record as a whole was "insufficient to establish fibromyalgia syndrome as a medically determinable impairment per Social Security Ruling 12-2p." (R. 15-16.)

At the third step, the ALJ concluded that Williamson's impairments do not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16.) At this step, the ALJ also considered the evidence of Williamson's mental health diagnoses, but ultimately determined that "the claimant's mental impairment does not cause at least two 'marked' limitations or one 'extreme' limitation" and found them not disabling. (R. 17.)

Accordingly, the ALJ then had to determine whether Williamson retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Williamson] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and walk for 4 hours of an 8 hour day, [and] can sit for six hours of an 8 hour day. She will require a sit-stand option meaning that she can stand and walk for 1 hour, after which she would need to be able to sit for up to one hours before either a break or having to stand and walk again while remaining on task at the workstation. Alternatively, she can sit for 2 hours before she would need to be able to take a break or be allowed to stand at the workstation for up to an hour. She can occasionally operate foot controls bilaterally. She can occasionally climb ramps and stairs, but she can never climb ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She must avoid all exposure to unprotected heights and dangerous moving machinery; concentrated exposure to humidity and wetness as well as extreme temperatures; and concentrated exposure to fumes, gases, odors, dusts, etc. She is limited to unskilled work consistent with 1-3 step tasks, with no more than 2 hours of concentration without a break in an environment where changes are infrequent and gradually introduced.

(R. 17-18.) Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

In reaching this RFC determination, the ALJ discussed Williamson's testimony and the medical evidence in the record. (R.

18-25.) The ALJ summarized his conclusion of Williamson's physical symptoms and condition as follows:

> The Administrative Law Judge finds that the claimant's neck disorder and supported pain symptoms would limit her ability to lift, but as shown above, there is no evidence of neurological involvement in the upper extremities that would further reduce her ability to lift. The Administrative Law Judge finds that the claimant's osteoarthritis in her knees along with her obesity would result in her inability to stand or walk more than four hours a day, but the success of her left knee surgery and the minimal treatment in the right fails to support additional limitations. The Administrative Law Judge has considered the effect of the claimant's obesity and resulting fatigue as well as the effect on her joints when assigned the described sit/stand option and the limitations in postural activities. The Administrative Law Judge has also carefully considered the effect that the nonsevere impairments could have upon the residual functional capacity . . . The Administrative Law Judge has considered the minimal limitations imposed by the claimant's diabetes mellitus, asthma, lumbar spine degenerative disc disease, hypertension, and heart disease [and] finds that none of those further reduce the residual functional capacity. The claimant's minimal asthma is considered in limiting her work around pulmonary irritants and other environments. The Administrative Law Judge has also limited the claimant to no climbing of ladders, ropes, or scaffolds and not working at heights and with dangerous moving machinery. The claimant has complained of dizziness and occasional syncopal episodes. There is no specific medically determinable impairment identified in the record to account for these episodes. The claimant's cardiologist rule[d] out a cardiac cause, and the claimant's neurologist speculated that the dizziness was due to hypertension medications. Nevertheless, the Administrative Law Judge concludes that the claimant should avoid heights and dangerous machinery due to her history of complaints and any side effects of pain or other medications.

(R. 22.) The ALJ also summarized Williamson's mental impairments, but found that:

-5-

> While there is no evidence of a cognitive limitation that would impact the claimant's ability to work, the Administrative Law Judge concludes the claimant's limitations in concentration prevents the claimant from performing more detailed tasks. Nevertheless, the claimant can certainly concentrate on those simple tasks for periods of two hours followed by routine breaks. The claimant's limits in adapting are accommodated by environments where changes are infrequent and gradually introduced which would relieve some work stress.

(R. 24.)

The ALJ also considered medical opinion evidence. First, the ALJ considered the opinion of Dr. Apurva Dalal, Williamson's orthopedist at Tri-State Orthopedics and her treating physician. (R. 20.) Ultimately, the ALJ gave Dr. Dalal's opinion "little weight" for the following reasons:

> Despite Dr. Dalal's treating relationship to the claimant, his opinion is overly restrictive when compared to Dr. Dalal's treating notes and objective findings. At the office visit of July 23, 2019, Dr. Dulal [sic] noted negative straight leg raising, only moderate tenderness to palpation of the lumbar spine, and tenderness to the trochanteric bursa bilaterally. He noted that the claimant was in overall good health, that she was in no apparent distress, and that her pain was of recent onset. He then recommended conservative home treatment such as ice and nonsteroidal anti-inflammatory drugs. Dr. Dulal's [sic] opinion is inconsistent with all those of record, and it is inconsistent with the minimal findings at the physical consultative examination in March of 2019.

(R. 20-21.) The ALJ then considered the opinion of Dr. Linda Yates, a consultative examiner, giving it partial weight for the following reasons:

> Dr. Yates concluded the claimant could lift up to 20 pounds occasionally and 10 pounds frequently, and she found the claimant could sit for six hours. She added

-6-

>the claimant could stand for two hours and walk for one. She was limited to occasional reaching bilaterally with frequent handling and fingering and never pushing and pulling bilaterally. She could engage in occasional foot controls and never any postural activities. She could never work at heights, with machinery, humidity, pulmonary irritants, and extremities of temperatures. The Administrative Law Judge gives this opinion partial weight, but it is generally too restrictive. For example, the restrictions on never performing any of the postural activities are inconsistent with Dr. Yates own findings of full ranges of motion in the cervical spine and knees. They are also inconsistent with the claimant's lumbar spine imaging and the claimant's successful left knee surgery. It is inconsistent that Dr. Yates would find that the claimant could "never" stoop yet find her capable of sitting for six hours which, in fact, requires stooping. While the claimant's obesity would reasonable [sic] limit some of these activities, Dr. Yates has overstated the restrictions when considered with the longitudinal record. The environmental restrictions are also too severe. The claimant's asthma imposes no more than minimal impairments per the evidence, and the limitation to never being able to work around pulmonary irritants is inconsistent with that finding. There is no evidence in the medical record showing any exaggerated sensitivity to temperature extremes or with humidity other than the minimal asthma.

(R. 21.) The ALJ also considered the opinions of state agency consultants, but gave both of them "little weight" due to their excessive permissiveness and lack of any recommended limitations. (Id.) After considering all of this evidence and calculating Williamson's RFC, the ALJ then moved to step four.[2]

At step four, the ALJ found that Williamson was not capable of performing her past relevant work. (R. 24-25.) At step five,

---

[2] The ALJ also summarized and considered evidence and opinions regarding Williamson's mental impairments, but these findings are not challenged on appeal. (R. 22-24.)

the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 25.) The vocational expert testified that a hypothetical individual with Williamson's limitations would be able to perform the requirements of jobs such as "office helper . . . storage facility rental clerk . . . and document preparer." (Id.) The ALJ gave this testimony great weight, determined that Williamson is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and entered a finding of not disabled. (R. 26.)

On November 20, 2019, the ALJ issued a decision detailing the findings summarized above. (R. 7.) The Appeals Council denied Williamson's request for review. (R. 1.) Williamson now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, Williamson makes two arguments. First, she argues that "the ALJ's reasons for assigning little weight to Dr. Dalal's opinion are not supported by substantial evidence." (ECF No. 12 at 14.) Second, she argues that "the ALJ's reasons for giving little weight to Dr. Yates's opinion are not supported by substantial evidence." (Id. at 17.)

## II. ANALYSIS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the

-9-

Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

-10-

>exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity

criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

### C. Medical Opinion Evidence

As a preliminary matter, because Williamson filed her application for benefits before March 27, 2017, the ALJ was required to adhere to 20 C.F.R. § 404.1527 in considering medical

opinions and prior administrative medical findings in the record.[3] In formulating an RFC assessment under these regulations, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)); see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). "As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination." Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375 (6th Cir. 2013). The Sixth Circuit Court of Appeals has explained that:

> An opinion from a treating physician is 'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician. A nontreating source, who physically examines the patient 'but does not have, or did not have[,] an ongoing treatment relationship with' the patient, falls next along the continuum. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference.

Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007)) (internal citations omitted). A treating source's opinion is due controlling weight if it is "well-supported by

---

[3]For claims filed on or after March 27, 2017, new regulations that abandon the old scheme of weighing medical opinion evidence apply. See 20 C.F.R. § 404.1520c.

medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2); Turk v. Comm'r of Soc. Sec., 647 F. App'x 638, 640 (6th Cir. 2016). "The ALJ . . . only need provide 'good reasons' for both [his] decision not to afford the physician's opinion controlling weight and for [his] ultimate weighing of the opinion." Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 785 (6th Cir. 2017) For nontreating and nonexamining sources, the Commissioner should "weig[h] these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating source is not deemed controlling." Id. at 376. Despite these requirements, "a claimant is entitled under the SSA only to reasons explaining the weight assigned to his *treating sources*." Norris, 461 F. App'x at 439.

Williamson argues that the ALJ did not properly weigh two medical opinions. First, Williamson argues that the ALJ's reasons for assigning little weight to the opinion of her treating physician, Dr. Dalal, were not supported by substantial evidence. (ECF No. 12 at 14.) Second, she argues the same regarding the opinion of Dr. Yates, a consultative examiner. (Id. at 17.)

1. Dr. Dalal's Opinion

A claimant's treating source is given controlling weight so long as it is "well-supported by medically acceptable clinic and

-14-

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2); Turk, 647 F. App'x at 640. Here, the ALJ acknowledged that Dr. Dalal was Williamson's treating physician but gave his opinion little weight after finding it "overly restrictive when compared to Dr. Dalal's treating notes and objective findings." (R. 20.)

This finding was supported by substantial evidence. Dr. Dalal's treatment notes from a July 23, 2019 visit described "overall good health, that she was in no apparent distress," and that she only required "conservative home treatment such as ice and non-steroidal anti-inflammatory drugs." (R. 20-21.) Despite these minimal findings and the conservative treatments, Dr. Dalal still found that Williamson "could not perform even the minimal requirements of sedentary work." (R. 20.) The recommended conservative treatment alone provides "a good reason for discounting a treating source opinion" where it recommends extreme restrictions. Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 631 (6th Cir. 2016) (citing Lester v. Soc. Sec. Admin., 596 F. App'x 387, 389 (6th Cir. 2015) and McKenzie v. Comm'r of Soc. Sec., 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (table case)). But beyond the treatment, Dr. Dalal's notes and opinion reflect that he believed Williamson's prognosis was "fair." (R. 2055.) He found her "overall health good" and that she was "normal,

-15-

pleasant, well nourished, [and] in no acute distress." (R. 2046.) In prior opinions, Dr. Dalal found that Williamson was doing "amazingly well" and that her prior issues with arthritis had been "successfully treated." (R. 20.) For the ALJ, this evidence undercut the supportability and consistency of Dr. Dalal's opinion that Williamson could not even perform sedentary work. Inconsistencies like these are "good reasons" to not grant controlling weight, and "sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion[.]" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 407 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

Williamson points to other notes of Dr. Dalal that showed "physical abnormalities such as pain and tenderness in her lumbar spine; mild muscle spasms, and pain and tenderness in her hips," as well as other spinal problems. (ECF No. 12 at 16.) But the ALJ considered these symptoms and findings; he determined, however, that these symptoms did not support an inability to perform "even the minimal requirements of sedentary work." (R. 20); See (R. 14) ("the claimant presented to Tri-State Orthopedics . . .[where] the physicians noted some tenderness and mild muscle spasm"); (R. 20) ("Dr. Dalal noted negative straight leg raising, only moderate tenderness to palpitation of the lumbar spine, and tenderness to the trochanteric bursa bilaterally"). When combined with the prior

-16-

consideration of Dr. Dalal's findings and Williamson's other symptoms, this analysis firmly puts the ALJ within the "zone of choice" in which he could "go either way, without interference by the courts." Blakley, 581 F.3d at 406. To set this choice aside would impermissibly require "reweigh[ing] evidence considered by the ALJ." Stephenson v. Kijakazi, No. 1:20-CV-113-DCP, 2021 WL 4302407, at *13 (E.D. Tenn. Sept. 21, 2021) (citing Big Branch Res., Inc. v. Ogle, 737 F.3d 1063, 1074 (6th Cir. 2013)). As long as the ALJ cited substantial evidence for their conclusion, that conclusion stands, even where substantial evidence could support a different conclusion as well. See Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). Substantial evidence existed here.

2. Dr. Yates's Opinion

Dr. Yates performed a physical consultative examination of Williamson in March 2019. (R. 21.) ALJs are not required to give "good reasons" for the weight they give to non-treating source opinions. Ealy, 594 F.3d at 514 (citing Smith, 482 F.3d at 875). Instead, they should consider factors such as the length of the relationship, the supportability and consistency of the opinion, and the specialization of the source. Id. (citing 20 C.F.R. § 404.1527(d)). The ALJ gave Dr. Yates's opinion "partial weight" for being "generally too restrictive," (R. 21), but Williamson

argues that these findings are not supported by substantial evidence. (ECF No. 12 at 18).[4]

The ALJ's opinion was supported by substantial evidence. Williamson largely points to evidence that the ALJ considered in his analysis of Dr. Yates's opinion. Compare (ECF No. 12 at 18-19) ("She underwent a partial left knee replacement during the time in question") with (R. 21) ("the restrictions . . . are also inconsistent with the claimant's lumbar spine imaging and the claimant's successful left knee surgery.") Williamson notes that she had reduced active flexion in both hips and a reduced range of motion in her lumbar spine, but the ALJ noted that a lack of problems in the cervical spine and knees meant that a finding of *full* inability regarding postural activities was unsupported. (R. 20.) Further, the ALJ considered Williamson's "lumbar spine imaging," which "was essentially unremarkable," in finding Dr. Yates's restrictions inconsistent with the record. (R. 14, 21.)

Beyond the spine and knee evidence, Williamson argues that the ALJ "erred in asserting that Dr. Yates's opinion was internally [in]consistent" because the ALJ improperly stated that "sitting for several hours would require some stooping." (ECF No. 16 at 6) (internal quotation marks omitted). The undersigned agrees.

---

[4]Williamson's brief incorrectly states that the ALJ only gave Dr. Yates's opinion "little weight." (ECF No. 12 at 17.) The court assumes that Williamson nevertheless believes assigning "partial weight" was also not supported by substantial evidence.

-18-

Stooping and sitting are different acts, and ALJs are not "entitled to sua sponte render a medical judgment without some type of support for [their] determination." Bentley v. Colvin, No. 13-1403-SAC, 2015 WL 1204984, at *5 (D. Kansas Mar. 17, 2015) (citing Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004)). Here, as in Bentley and other cases, the "ALJ failed to cite to any evidence, medical or otherwise, that sitting for [x] hours a day requires the ability to stoop." Id. It was improper for the ALJ to conclude that "it was inconsistent that Dr. Yates would find that the claimant could 'never' stoop yet find her capable of sitting for six hours which, in fact, requires stooping" without some evidence to support this conclusion. (R. 21.) However, this accounts for only one "inconsistency" the ALJ identified. The ALJ gave multiple reasons for why he assigned Dr. Yates's opinion partial weight, and ultimately credited Dr. Yates's opinion more than non-examining opinions and other consultative opinions that found no restrictions on Williamson's abilities. (R. 21); Gayheart, 710 F.3d at 375 ("As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination.")

Williamson also argues that Dr. Yates's conclusion that Williamson cannot work around "pulmonary irritants, temperature extremes, or humidity due to her history of asthma" should have been given greater weight, (ECF No. 16 at 7), but the ALJ noted

-19-

that Williamson's respiratory examinations were "routinely normal" and that her asthma was well managed. (R. 21). While Williamson argues these examinations "were performed in the controlled setting of a doctor's office" and thus not probative, (ECF No. 16 at 7), there is no medical evidence that Williamson was sensitive to temperature, humidity, or irritants, nor was any evidence from a pulmonary specialist entered. (R. 13, 21). Further, the ALJ considered Williamson's asthma in their RFC determination, stating that she could not work around "concentrated exposure to humidity and wetness as well as extreme temperatures; and concentrated exposure to fumes, gases, odors, dusts, etc." (R. 18.) Ultimately, the ALJ was not even required to give "good reasons" for the weight assigned to Dr. Yates, and Williamson essentially asks the court to assign more weight to certain pieces of evidence than the ALJ did. Ealy, 594 F.3d at 514. But where the ALJ's conclusion is supported by substantial evidence, it must stand.

### III. CONCLUSION

For the reasons above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

January 3, 2022
Date